**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Devin W. MEANS, Defendant–Appellant.**

**No. 06–10715.**

United States Court of Appeals,
Ninth Circuit.

Submitted Sept. 28, 2007 *.

Filed Oct. 31, 2007.

---

* The Honorable Jane A. Restani, Chief Judge, United States Court of International Trade, sitting by designation.

** This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36–3.

* The panel unanimously finds this case suitable for decision without oral argument. *See* Fed. R.App. P. 34(a)(2).

Stanley A. Boone, Esq., Office of the U.S. Attorney, Fresno, CA, for Plaintiff–Appellee.

Carrie S. Leonetti, Esq., Federal Public Defender's Office, Fresno, CA, for Defendant–Appellant.

Before: SILER **, McKEOWN, and BEA, Circuit Judges.

### MEMORANDUM ***

Devin W. Means ("Means") appeals the district court's denial of his motion to dismiss the citations issued to him by the National Park Service ("NPS") for (1) operating a motor vehicle under the influence of alcohol in violation of 36 C.F.R. § 4.23(a)(1); (2) operating a motor vehicle with a blood alcohol concentration in excess of .08% in violation of 36 C.F.R. § 4.23(a)(2); and (3) speeding in violation of 36 C.F.R. § 4.21. We have jurisdiction pursuant to 28 U.S.C. § 1291, and we affirm. Because the facts are known to the parties, we revisit them only as necessary.

We review de novo the district court's denial of a motion to dismiss. *United States v. Bueno–Vargas*, 383 F.3d 1104, 1106 (9th Cir.2004). We review for clear error the district court's findings of fact. *United States v. Emmert*, 829 F.2d 805, 810–11 (9th Cir.1987).

### I.

Means asserts his continued detention by the NPS after he was released from federal custody constituted (1) an illegal seizure in violation of the Fourth Amendment and (2) a deprivation of liberty without due process of law in violation of the

---

** The Honorable Eugene E. Siler, Jr., Senior United States Circuit Judge for the Sixth Circuit, sitting by designation.

*** This disposition is not appropriate for publication and is not precedent except as provided by 9th Cir. R. 36–3.

Fifth Amendment. Under the Fourth Amendment, detentions following an arrest without a judicial determination of probable cause and lasting less than 48 hours are presumptively constitutional. *County of Riverside v. McLaughlin,* 500 U.S. 44, 56, 111 S.Ct. 1661, 114 L.Ed.2d 49 (1991).

The district court made the following findings of fact. Means was arrested and taken into the NPS's custody on October 22, 2004, at approximately 4:20 p.m. After the NPS discovered Means was on California parole, it notified the California authorities that Means had been arrested. On October 23, 2004, at approximately 10:15 a.m., the NPS received a parole detainer [1] from California, which requested the NPS hold Means in custody pursuant to California Penal Code § 3056.[2] Sometime during the morning of October 23, 2004, Means was released from federal custody, subject to certain conditions. However, the NPS continued to hold Means in custody pursuant to the California detainer and transported him to the Mariposa County Adult Detention Center at approximately 2:00 p.m. on October 23, 2004.

■ Means concedes his initial arrest and detention were valid. Prior to his being held on the California parole detainer, Means was in federal custody for less than the presumptively constitutional 48 hours. Means attempts to rebut the presumption of constitutionality by asserting the NPS held him in custody after his release from federal custody, and before the receipt of the California detainer, for the improper purpose of waiting for Cali-

fornia to lodge a parole detainer against him.

Means's contention lacks factual support. The district court implicitly found the California detainer arrived *before* Means's release from federal custody. We have reviewed the record and hold the district court's finding was not clearly erroneous. Further, there is no evidence in the record supporting an improper purpose on the part of the NPS in detaining Means.

■ Means also contends the NPS violated his Fourth Amendment rights by continuing to hold him in custody and transporting him to the Mariposa County Detention Center after his release from federal custody. Means's detention following his release from federal custody was pursuant to the California parole detainer. Under California law, probable cause is not required to arrest a parolee for a violation of parole. *People v. Villareal,* 262 Cal.App.2d 438, 447, 68 Cal.Rptr. 610 (1968); Cal.Penal Code § 3060 ("The written order of the parole authority shall be a sufficient warrant for any peace or prison officer to return to actual custody any conditionally released or paroled prisoner."). The district court found the California detainer sent to the NPS qualified as a "written order of the parole authority," a finding Means does not challenge on appeal. Thus, the NPS's detention of Means under the California detainer did not violate his Fourth Amendment rights.

---

1. "A detainer is a request filed by a criminal justice agency with the institution in which a prisoner is incarcerated, asking the institution either to hold the prisoner for the agency or to notify the agency when release of the prisoner is imminent." *Carchman v. Nash,* 473 U.S. 716, 719, 105 S.Ct. 3401, 87 L.Ed.2d 516 (1985). "Detainers generally are based on outstanding criminal charges, outstanding pa-

role or probation-violation charges, or additional sentences already imposed against the prisoner." *Id.*

2. "Prisoners on parole shall remain under the legal custody of the department and shall be subject at any time to be taken back within the inclosure of the prison." Cal.Penal Code § 3056.

■ Means further asserts the California detainer, which may have given the NPS authority to *hold* Means, did not give the NPS authority to *transport* Means to the Mariposa County Detention Center. Means cites no authority holding the transportation of a lawfully detained individual violates the Fourth Amendment, and we have found none. We hold Means's transportation to the Mariposa County Detention Center did not violate his Fourth Amendment rights.

Finally, Means contends his arrest, which "occurred not only in the absence of sufficient notice and an opportunity to respond, but in total secrecy," constituted a deprivation of liberty without due process of law in violation of the Fifth Amendment. Means offers no support, factual or legal, for this contention. We hold Means's detention pursuant to a lawful arrest and a valid parole detainer did not violate his due process rights.

## II.

Next, Means contends the 173–day delay between his arrest and appearance before the United States Magistrate violated (1) Federal Rule of Criminal Procedure 5(a)(1)(A) ("Rule 5(a)") and the *Mallory* rule,[3] (2) the local Criminal Justice Act plan, and (3) the Fourth Amendment.

### A.

■ We need not reach the question whether the 173–day delay violated Rule 5(a)[4] because Means has failed to show prejudice. Rule 5(a) is enforced by rendering inadmissable any incriminating evidence obtained during the unnecessary delay. *United States v. Studley,* 783 F.2d

934, 937 n. 2 (9th Cir.1986); *see also Mallory v. United States,* 354 U.S. 449, 453–56, 77 S.Ct. 1356, 1 L.Ed.2d 1479 (1957) (holding the confession made by the defendant while in custody is inadmissible because the defendant's untimely arraignment under Rule 5(a) rendered his custody unlawful). Here, Means does not contend any evidence was unlawfully obtained during the 173–day delay, either while he was in federal custody or after his release. Thus, Means has failed to state a cognizable Rule 5(a) claim. *See Studley,* 783 F.2d at 937 n. 2 ("Since the normal remedy for violation of Rule 5(a) is suppression of evidence obtained during the unreasonable delay, we need not decide whether [the defendant] was in fact subjected to any delay that would constitute a Rule 5(a) violation.").

### B.

■ Means contends the district court erred in denying his motion to dismiss based on the violation of the United States District Court for the Eastern District of California's local Criminal Justice Act plan ("CJA"). Gen. Order No. 323, at IX(A) (1996). The CJA requires, *inter alia,* federal law enforcement authorities promptly to ask any person in custody whether he is financially able to obtain legal representation and if not, notify the Federal Public Defender's Office to assign counsel. *Id.* We need not decide whether the CJA was violated in this case. Even assuming a CJA violation occurred, dismissal of the charges is not a correct remedy for a CJA violation. Neither the Eastern District's local Criminal Justice Act plan nor the Criminal Justice Act[5] specifies dismissal of

---

**3.** The *Mallory* rule refers to the U.S. Supreme Court's decision in *Mallory v. United States,* 354 U.S. 449, 77 S.Ct. 1356 (1957).

**4.** In relevant part, Federal Rule of Criminal Procedure 5 states: "A person making an arrest within the United States must take the

defendant without unnecessary delay before a magistrate judge, or before a state or local judicial officer as Rule 5(c) provides, unless a statute provides otherwise." Fed. R.Crim. Pro. 5(a)(1)(A).

**5.** 18 U.S.C. § 3006A.

the charges as a remedy for its violation. Further, "[i]f the normal remedy for violations of the Fourth Amendment, the Sixth Amendment, and Rule 5 is exclusion of evidence and not dismissal of a case, then ... dismissal would [not be a correct] remedy for a violation [of] the local CJA Plan." *United States v. Guthrie,* 2007 WL 1176194, *5 (E.D.Cal. Apr.20, 2007) (citations omitted). Thus, the district court did not err in denying Means's motion to dismiss based on a CJA violation.

## C.

█ Means asserts the 173–day delay between his arrest and initial appearance before a magistrate violated the Fourth Amendment. The Fourth Amendment requires "a judicial determination of probable cause as a prerequisite to *extended restraint of liberty following arrest." Gerstein v. Pugh,* 420 U.S. 103, 114, 95 S.Ct. 854, 43 L.Ed.2d 54 (1975) (emphasis added). Judicial determinations of probable cause within 48 hours of the arrest are presumptively constitutional. *McLaughlin,* 500 U.S. at 56, 111 S.Ct. 1661.

Here, Means was not detained by the NPS for further *federal* proceedings. The NPS detained Means on federal charges for less than the presumptively constitutional 48 hours and thereafter released him on his own recognizance. The conditions imposed on Means upon his release on the federal charges were little more than requirements that Means obey the law, notify the court of address and telephone number changes, and appear in court at a specified date. Such conditions do not constitute an "extended restraint of liberty" under *Gerstein.* Further, even if a *Gerstein* violation occurred, dismissal of the charges is not a correct remedy. *See Gerstein,* 420 U.S. at 119, 95 S.Ct. 854 ("[A] conviction will not be vacated on the ground that the defendant was detained pending trial without a determination of probable cause.").

## III.

█ Finally, Means contends the 173–day delay between his arrest and initial appearance before a magistrate violated his Sixth Amendment right to a speedy trial. We determine whether an accused's right to a speedy trial has been violated by balancing four factors: (1) "whether delay before trial was uncommonly long"; (2) "whether the government or the criminal defendant is more to blame for that delay"; (3) "whether, in due course, the defendant asserted his right to a speedy trial"; and (4) "whether he suffered prejudice as the delay's result." *Doggett v. United States,* 505 U.S. 647, 651, 112 S.Ct. 2686, 120 L.Ed.2d 520 (1992) (citing *Barker v. Wingo,* 407 U.S. 514, 530, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972)) ("the *Barker* test").

The first factor, length of the delay, is broken down to two steps. To trigger a speedy trial inquiry, the accused must show the delay between the arrest and initial appearance was presumptively prejudicial. *Doggett,* 505 U.S. at 651–62, 112 S.Ct. 2686. If the delay was presumptively prejudicial, then the court considers the length of the delay as one factor in determining whether the right to a speedy trial was violated. *Id.* at 652, 112 S.Ct. 2686. If the delay was not presumptively prejudicial, the inquiry ends and there is no speedy trial violation. *Id.* at 651–62, 112 S.Ct. 2686. Even though the Supreme Court has suggested a delay is presumptively prejudicial if it is close to one year, *id.* at 652 n. 1, 112 S.Ct. 2686, the Ninth Circuit has held that a delay of six months may trigger the speedy trial inquiry. *United States v. Valentine,* 783 F.2d 1413, 1417 (9th Cir.1986).

We need not decide whether the delay here was presumptively prejudicial. Even

assuming the 173–day delay was prejudicial, there is no speedy trial violation under the four-factor *Barker* test. First, although Means suffered a delay of approximately six months, he was only in *federal* detention for *one day* before trial. Second, Means was responsible for much of the delay. Means knew about his initial appearance date before the magistrate (November 16, 2004, which was 25 days after his arrest) but failed to notify the federal government of his state custody and provide the federal government his new address and telephone number. Third, there is no evidence in the record that Means asserted his right to a speedy trial between the time of his arrest and his initial appearance before the magistrate. Fourth, Means contends he suffered prejudice from the delay because he lost the opportunity to get credit against his state sentence for the one day he spent in federal custody on charges arising from the same conduct. Balancing these factors, we hold the 173–day delay between Means's arrest and initial appearance did not violate his Sixth Amendment right to a speedy trial.

**AFFIRMED.**

---

* The Honorable Miriam Goldman Cedarbaum, Senior United States District Judge for the Southern District of New York, sitting by designation.

** This disposition is not appropriate for publication and is not precedent except as provided by 9th Cir. R. 36–3.