# United States Court of Appeals

## For the Eighth Circuit

_____

No. 12-2047

_____

United States of America

*Plaintiff - Appellee*

v.

Rocio Chavez

*Defendant - Appellant*

_____

Appeal from United States District Court
for the District of Nebraska - Omaha

_____

Submitted: December 13, 2012
Filed: February 6, 2013

_____

Before WOLLMAN, BYE, and BENTON, Circuit Judges.

_____

BENTON, Circuit Judge.

Rocio Chavez pled guilty to misuse of a social security number, in violation of 42 U.S.C. § 408(a)(7)(B). Her conditional plea allows this appeal. Chavez alleges that the district court should have dismissed the indictment because her arrest and detention violated Federal Rule of Criminal Procedure 5(a). Having jurisdiction under 28 U.S.C. § 1291, this court affirms.

I.

In January 2011, the Department of Homeland Security investigated all I-9 forms of Nebraska Beef, Inc. DHS identified 178 as possibly suspect, and 14 as matching identity-theft complaints on file with the Federal Trade Commission. One of these 14 was "Gloria Ester Blanco."

On May 3, 2011, DHS agents went to Nebraska Beef for interviews. The woman purporting to be Blanco did not speak English. Once a Spanish-speaking agent arrived, the woman refused to answer any questions. She was arrested without a warrant and taken to the Office of Enforcement and Removal Operations in Omaha. There, the woman's fingerprints were taken and she received *Miranda* warnings. She remained unresponsive to questions about her identity. The agents did not know her identity.

Agents learned that Nebraska Beef planned to remove and destroy the contents of the woman's locker. In response to the agents' request, a Nebraska Beef employee gave them her purse. Inside it, agents found identifying documents in the names of Gloria Blanco and Rocio Chavez, and a business card of an Omaha Public Schools employee.[1] Shown a picture of the woman, the employee identified her as "Rocio." At this point, the agents believed that "Blanco" was Rocio Chavez, and processed her for removal proceedings.

On May 5, the agents referred the case to the United States Attorney for consideration of the identity-theft charges. Chavez was indicted on May 20, and taken before a magistrate judge for initial appearance on May 27. She moved to dismiss the indictment, arguing that a hearing was required within 48 hours of her

---

[1]The district court later suppressed this evidence, which is not at issue on appeal.

initial arrest, pursuant to Rule 5(a). A magistrate judge issued findings, recommending that the motion be denied. *United States v. Chavez*, No. 8:11CR165, 2011 WL 5570696 (D. Neb. Oct. 3, 2011). The district court adopted the findings, and denied Chavez's motion to dismiss.

## II.

Because this case involves a rule of procedure, this court reviews the legal conclusions de novo and the findings of fact for clear error. *United States v. Shepard*, 462 F.3d 847, 861 (8th Cir. 2006), *citing United States v. Vanhorn*, 296 F.3d 713, 719 (8th Cir. 2002). Claims of constitutional error are reviewed de novo. *United States v. Smith*, 656 F.3d 821, 826 (8th Cir. 2011).

"A person making an arrest within the United States must take the defendant without unnecessary delay before a magistrate judge . . . ." **Fed. R. Crim. P. 5(a)(1)(A)**. The Fourth Amendment requires "a fair and reliable determination of probable cause as a condition for any significant pretrial restraint of liberty, and this determination must be made by a judicial officer either before or promptly after arrest." *Gerstein v. Pugh*, 420 U.S. 103, 125 (1975) (footnotes omitted). This constitutional requirement generally requires defendants to be brought before a magistrate within 48 hours of arrest. *County of Riverside v. McLaughlin*, 500 U.S. 44, 56-57 (1991).[2]

---

[2]Rule 5(a) and the *Gerstein/Riverside* standard, while related and analogous, are distinct concepts. *See United States v. Garcia-Echaverria*, 374 F.3d 440, 452 n.17 (6th Cir. 2004) ("It is not entirely clear to what extent the *McLaughlin* rule and Fed. R. Crim. P. 5(a) overlap."); *United States v. Encarnacion*, 239 F.3d 395, 398 n.2 (1st Cir. 2001) ("While the Rule 5(a) and Fourth Amendment contexts are certainly analogous, the 48-hour rule is a requirement of the Fourth Amendment, not Rule 5(a)." (citation omitted) (internal quotation marks omitted)).

In this case, Chavez was arrested without a warrant. Immigration officials can make warrantless arrests in certain circumstances. **8 U.S.C. § 1357(a)**. First, an official has the power

> to arrest any alien in the United States, if he has reason to believe that the alien so arrested is in the United States in violation of any such law or regulation and is likely to escape before a warrant can be obtained for his arrest, but the alien arrested shall be taken without unnecessary delay for examination before an officer of the Service having authority to examine aliens as to their right to enter or remain in the United States.

*Id.* **§ 1357(a)(2)**. "Reason to believe" requires the official to have probable cause that the person is in the United States illegally. *United States v. Quintana*, 623 F.3d 1237, 1239 (8th Cir. 2010). Because immigration proceedings are civil, persons arrested under § 1357(a)(2) do not have the protections of Rule 5(a). *Id.* at 1240 n.1, *citing* *United States v. Encarnacion*, 239 F.3d 395, 398-99 (1st Cir. 2001); *United States v. Perez-Perez*, 337 F.3d 990, 997 (8th Cir. 2003).

> Additionally, an immigration official has the authority, without a warrant,

> (4) to make arrests for felonies which have been committed and which are cognizable under any law of the United States regulating the admission, exclusion, expulsion, or removal of aliens, if he has reason to believe that the person so arrested is guilty of such felony and if there is likelihood of the person escaping before a warrant can be obtained for his arrest, but the person arrested shall be taken without unnecessary delay before the nearest available officer empowered to commit persons charged with offenses against the laws of the United States; and

> (5) to make arrests –

>> (A) for any offense against the United States, if the offense is committed in the officer's or employee's presence, or

(B) for any felony cognizable under the laws of the United States, if the officer or employee has reasonable grounds to believe that the person to be arrested has committed or is committing such a felony, if the officer or employee is performing duties relating to the enforcement of the immigration laws at the time of the arrest and if there is a likelihood of the person escaping before a warrant can be obtained for his arrest.

**8 U.S.C. § 1357(a)(4)-(5)**. These arrests are criminal, and Rule 5(a) applies. **Fed. R. Crim. P. 5(a)(1)(A)**. Subsection 4, relating to immigration-related felonies, confirms this point by stating that "the person arrested shall be taken without unnecessary delay before the nearest available officer empowered to commit persons charged with offenses against the laws of the United States." **8 U.S.C. § 1357(a)(4)**.

The parties agree that the issue here is whether Chavez was taken into civil, non-pretextual custody. *See Encarnacion*, 239 F.3d at 399-400. If so, Rule 5(a) does not apply. If the arrest was criminal, however, Rule 5(a) applies.

The district court said: "In this case, Agent Wimer initially arrested Chavez based on probable cause that she had committed the crime of identity theft. At the same time, Agent Wimer had reasonable suspicion to detain Chavez as an illegal alien." *Chavez*, 2011 WL 5570696, at *4. This characterization is correct. The social security number Chavez used on her I-9 form was the subject of an FTC complaint for identity theft – giving probable cause for criminal arrest. Conversely, the only evidence of her illegal immigration status was her inability to speak English, her refusal to answer questions, and her use of a social security number subject to an identity-theft complaint. Agent Wimer testified that he had probable cause as to the identity-theft offense, but only reasonable suspicion of the immigration offense. *See Alabama v. White*, 496 U.S. 325, 330 (1990) ("Reasonable suspicion is a less demanding standard than probable cause not only in the sense that reasonable

-5-

suspicion can be established with information that is different in quantity or content than that required to establish probable cause, but also in the sense that reasonable suspicion can arise from information that is less reliable than that required to show probable cause.").

The district court nonetheless ruled that Chavez was taken into civil custody. *Chavez*, 2011 WL 5570696, at \*4. This is incorrect. A warrantless arrest for a civil immigration offense requires probable cause. *Quintana*, 623 F.3d at 1239. The agent, therefore, lacked authority to arrest Chavez pursuant to § 1357(a)(2),[3] because the only ground for arrest was criminal. This court holds that Chavez was taken into criminal custody.

That Chavez's illegal status was confirmed "within a couple hours" is irrelevant to determining of the type of arrest in this case. *See Chavez*, 2011 WL 5570696, at \*4. So too are the deportation procedures after the arrest. The type of arrest must be measured when the arrest was made. *Devenpeck v. Alford*, 543 U.S. 146, 152 (2004) ("Whether probable cause exists depends upon the reasonable conclusion to be drawn from the facts known to the arresting officer at the time of the arrest."). As no authority then existed for civil arrest, Chavez's arrest was criminal. This case is dissimilar from cases involving alleged Rule 5(a) violations when the arrest was properly civil. *See, e.g.*, *United States v. Dyer*, 325 F.3d 464, 470 (3d Cir.

---

[3]Chavez argues in her reply brief – for the first time – that there also was no authority under § 1357(a)(2) because agents did not establish that Chavez was likely to escape before a warrant could be obtained. This court will not consider this argument because it was raised for the first time in the reply brief. *Allen v. United States*, 590 F.3d 541, 543 n.1 (8th Cir. 2009). Further, the argument was not raised before the district court, and this court will generally not consider arguments made for the first time on appeal. *United States v. Green*, 691 F.3d 960, 965 (8th Cir. 2012).

2003); *Encarnacion*, 239 F.3d at 399; *United States v. Noel*, 231 F.3d 833, 837 (11th Cir. 2000) (per curiam).

As Chavez was taken into criminal custody, she was entitled to the protections of Rule 5(a). She was not taken promptly before a magistrate judge. Rule 5(a) was violated. *See* **Fed. R. Crim. P. 5(a)(1)(A)**. The district court's contrary ruling was error. Additionally, the lack of a prompt probable-cause determination violated the Fourth Amendment. *See Gerstein*, 420 U.S. at 125.

## III.

Even so, the appropriate remedy is not dismissal of the indictment. Chavez claims that there must be some remedy for the violation of these rights. Remedies may exist for violations like those here, but dismissal is not one of them.

This court – among others – has held that a Rule 5(a) violation will not affect a conviction absent a showing of prejudice. **United States v. Nazarenus**, 983 F.2d 1480, 1483 (8th Cir. 1993); *see also* **United States v. Causey**, 835 F.2d 1527, 1529 (5th Cir. 1988); **United States v. Studley**, 783 F.2d 934, 937 n.2 (9th Cir. 1986). Further, the Third Circuit has explained,

> the remedy for [a Rule 5(a)] violation is not dismissal of the indictment. Rather, since the provisions of Fed. R. [Crim.] P. 5(a) are procedural, not substantive, the sanction imposed by federal courts for failure to comply with Rule 5(a) is suppression of statements taken during the period of unnecessary delay.

*Dyer*, 325 F.3d at 470 n.2 (citations omitted) (internal quotation marks omitted); *see also* **Studley**, 783 F.2d at 937 n.2. In this case, there is no showing of prejudice to Chavez from the delay between arrest and appearance. Even if there were, the

appropriate remedy would be suppression of the statements made during that period, not dismissal of the indictment.

Dismissal is also not the appropriate remedy for a *Gerstein* violation. ***Gerstein***, 420 U.S. at 119 ("[I]llegal arrest or detention does not void a subsequent conviction. . . . [A] conviction will not be vacated on the ground that the defendant was detained pending trial without a determination of probable cause."); ***United States v. Means***, 252 F. Appx. 830, 835 (9th Cir. 2007) (mem. op.) ("[E]ven if a *Gerstein* violation occurred, dismissal of the charges is not a correct remedy."); ***United States v. Garcia-Echaverria***, 374 F.3d 440, 452 n.17 (6th Cir. 2004) (noting that a dismissal of the indictment would not be an appropriate remedy, and citing *United States v. Fullerton*, 187 F.3d 587, 590-92 (6th Cir. 1999), which suggests that the exclusionary rule or a *Bivens* action would be appropriate); ***United States v. Davis***, 785 F.2d 610, 616 (8th Cir. 1986) ("It has been held time and time again that an illegal arrest and detention, without more, does not void a subsequent prosecution."). This court and the Supreme Court have not decided whether even a suppression remedy is available for a *Gerstein* violation. ***United States v. Davis***, 174 F.3d 941, 946 n.8 (8th Cir. 1999), *citing* ***Powell v. Nevada***, 511 U.S. 79, 85 n.* (1994).

Chavez cites to several Speedy Trial Act cases, arguing that her arrest was a "mere ruse," and dismissal is therefore appropriate. *See, e.g.*, ***United States v. De La Pena-Juarez***, 214 F.3d 594, 598 (5th Cir. 2000); ***United States v. Grajales-Montoya***, 117 F.3d 356, 366 (8th Cir. 1997); ***United States v. Cepeda-Luna***, 989 F.2d 353, 355-56 (9th Cir. 1993). First, these situations are incongruent. The prejudice in the mere-ruse cases is that civil arrest does not trigger the time clock under the Act, giving investigators more time to develop charges. Here, Chavez does not demonstrate any prejudice. Further – contrary to her contention – the remedy in the mere-ruse cases is not dismissal of the charges; the remedy is for the time clock to begin at initial arrest. *See* ***De La Pena-Juarez***, 214 F.3d at 598; ***Grajales-Montoya***, 117 F.3d at 366.

Although recalculating the time clock may result in dismissal of the charges if they were not timely filed, the recalculation itself does not automatically dismiss the charges.

Moreover, there is no "ruse" in this case. Chavez's argument incorrectly assumes she was being held in civil custody. As the district court explained, probable cause existed for the criminal charges at the time of arrest. Chavez was thus *properly* arrested in criminal custody. She is therefore entitled to the rights and remedies available to criminal detainees (but not to dismissal of her indictment). The immigration officials did not arrest Chavez pursuant to civil authority as a mere ruse to further investigate criminal charges.

Despite the district court's error in finding no Rule 5(a) or Fourth Amendment violation, dismissal is not the appropriate remedy.

\* \* \* \* \* \* \*

The judgment of the district court is affirmed.

_____