# IN THE COURT OF APPEALS OF IOWA

No. 14-1757
Filed September 14, 2016

**STATE OF IOWA,**
          Plaintiff-Appellee,

**vs.**

**PAUL JOSEPH BORUCH,**
          Defendant-Appellant.
_____


          Appeal from the Iowa District Court for Dallas County, Paul R. Huscher,

Judge.


          Paul Joseph Boruch appeals his conviction, claiming counsel was

ineffective for failing to object to an erroneous jury instruction and the court

imposed an illegal sentence by ordering jail room-and-board fees and by

extending a no-contact order.  **AFFIRMED IN PART, VACATED IN PART, AND**

**REMANDED.**


          Mark C. Smith, State Appellate Defender, and Theresa R. Wilson,

Assistant Appellate Defender, for appellant.

          Thomas J. Miller, Attorney General, and Kelli A. Huser, Assistant Attorney

General, for appellee.


          Considered by Vaitheswaran, P.J., and Doyle and Mullins, JJ.

**MULLINS, Judge.**

Paul Joseph Boruch was convicted of willful injury causing serious injury and going armed with intent. He has appealed, arguing counsel was ineffective for failing to object to an erroneous jury instruction and the court imposed an illegal sentence by ordering jail room-and-board fees and by extending a no-contact order. Upon our determination Boruch suffered no prejudice from the erroneous jury instruction, the jail fees were properly ordered, and the no-contact order was entered without statutory authority, we affirm in part, reverse in part, and remand.

## I.       Background Facts and Proceedings

Briefly, the salient facts are that Boruch and the victim were employees of a traveling carnival. They shared a semitrailer for storage, and their sleeping quarters—called "possum" or "pot" bellies—were on opposite sides of the same trailer. On an evening after working at the Dallas County fairgrounds, they ended up at a bar, drinking several alcoholic beverages and playing pool. After they had a disagreement between themselves, the bartender told them to leave. The victim returned to the carnival location, changed into pajamas, got into his possum belly, and closed the door to sleep. He kept a metal tent stake in the possum belly with him for use as a weapon if he needed such protection. A brief time later, Boruch returned to the location of the trailer. The accounts of the victim and Boruch vary, but it is undisputed that Boruch went to the victim's possum belly and the victim got out of the possum belly. A scuffle ensued, and the victim suffered a knife wound to his back. The victim claims Boruch stabbed him, he was certain it was Boruch as his face was within six inches of Boruch's

face, Boruch told him to stay down on the ground after the scuffle, and then Boruch ran off. Boruch claims the scuffle was started by the victim swinging his tent stake at Boruch, and, after the two of them went to the ground, Boruch saw a set of feet walk by and the victim then claimed to have been stabbed. When Boruch got up, he saw the knife in the victim's back and another person standing nearby. Boruch claims he asked the other person, "[W]hy did you do this?" In response, the person lifted his shirt to show a gun. Boruch then went to another area of the fairgrounds. When the police found Boruch hiding in tall grass, he told the police he made a big mistake, he really screwed up, and he wanted the police to shoot him.

Boruch was charged with willful injury intending to and causing serious injury, going armed with intent, and being an habitual offender. He had an initial appearance on July 9, 2014, at which time a preliminary hearing was scheduled for July 29. While still in jail on a cash-only bond, he filed a pro se request for a bond review hearing that was held on July 25. The court denied the request to change the bond, and Boruch remained in jail. On July 28, the State filed a trial information, which the court approved with no changes in Boruch's conditions of release.

A jury found Boruch guilty as charged. He was sentenced to prison on October 22, 2014. The court also ordered, "Defendant is further advised that if the Dallas County Sheriff charges room and board fees pursuant to Iowa Code section 356.7(2) [(2013)] in addition to other fines, costs, and surcharges, those fees shall become a judgment against the Defendant herein," and ordered, "The No-Contact Order is/previously entered in this matter is hereby extended for

5 years from the date of the defendant's release from incarceration." Immediately after sentencing, Boruch filed his notice of appeal. On October 31, 2014, the Dallas County Sheriff's Office filed a claim for reimbursement of room and board for 106 days from July 9, 2014, to October 23, 2014, at sixty dollars per day, plus fifteen dollars in medical costs. On December 1, 2014, the court entered an order approving the claim made by the sheriff.

## II.     Standard and Scope of Review

We review claims of erroneous jury instructions for errors at law. *See Rivera v. Woodward Res. Ctr.*, 865 N.W.2d 887, 891 (Iowa 2015). "We review ineffective-assistance-of-counsel claims de novo." *State v. Ross*, 845 N.W.2d 692, 697 (Iowa 2014). We review sentences for correction of errors at law where nonconstitutional challenges are raised. *State v. Seats*, 865 N.W.2d 545, 553 (Iowa 2015). "When a defendant attacks the constitutionality of a sentence, our review is de novo." *Id.* When a sentence is within statutory limits, we apply an abuse-of-discretion standard. *Id.*

## III.    Analysis

### A.     Jury Instructions

Boruch argues on appeal the district court erred when it instructed the jury as follows:

> The State must prove all of the following elements of the crime of Willful Injury Causing Serious Injury, as charged in Count 1:
> 1.     On or about the 8th day of July, 2014, Paul Joseph Boruch did an act which was intended to cause pain or injury, or result in physical contact which was insulting or offensive to [the victim].
> 2.     The Defendant specifically intended to cause a serious injury to [the victim].

3.     [The victim] sustained a serious injury.

Boruch relies on the case of *State v. Schuler*, 774 N.W.2d 294 (Iowa 2009), to argue the third element failed to require the jury to find Boruch caused a serious injury to the victim. The elements of the offense of willful injury causing serious injury include requirements that the defendant "does an act which is not justified and which is intended to cause serious injury to another . . . [and] causes serious injury to another." Iowa Code § 708.4; *Schuler*, 774 N.W.2d at 298.

In *Schuler*, the defendant had objected to the third element of the jury instruction that mirrors the instruction given in the case before us and made essentially the same argument Boruch raises on appeal. *Schuler*, 774 N.W.2d at 297. The supreme court determined the difference between "sustained a serious injury" and "caused a serious injury" was not stylistic, but substantive; the former has a passive connotation, while the later has an active inference. *Id.* The court found the instruction was faulty as it allowed the jury to convict the defendant without finding all of the elements required by the statute. *Id.* The State urged the court to find the defendant was not prejudiced by the error and to conclude the error was harmless beyond a reasonable doubt. Without deciding whether a harmless-error analysis would be appropriate in that case, the court concluded, even if it were to apply the analysis, it could not conclude the error was harmless as the fight that resulted in the injury to the victim in *Schuler* involved as many as six participants and a reasonable jury could have found one of the other individuals caused the victim's serious injury. *Id.* at 300. And, if the jury were to conclude a different individual caused the serious injury to the victim, the instruction given to the jury would have allowed it to find Schuler guilty if it had

found he intended to cause serious injury to the victim and the victim sustained serious injury caused by an individual other than Schuler. The supreme court reversed the conviction and remanded for a new trial.

As noted above, in *Schuler*, the defendant had objected to the faulty jury instruction, and thus had preserved error for the appeal. *Id.* at 297. In the present case, Boruch did not object to the instruction that was given. Thus, he raises the issue as an ineffective-assistance-of-counsel claim. In order to succeed on a claim of ineffective assistance of counsel, a defendant must prove counsel breached a duty and prejudice resulted. *See Ledezma v. State*, 626 N.W.2d 134, 141 (Iowa 2001). Both elements must be proven by a preponderance of the evidence, and we reject the claim if it fails on either ground. *Id.* at 142. A breach of duty is shown if counsel performed below the standards of a "reasonably competent attorney" as measured against the "prevailing professional norms." *Id.* (citation omitted).

Following the reasoning of the *Schuler* decision, we find the contested jury instruction was not a correct statement of Iowa law and Boruch's counsel failed to provide effective assistance by failing to object to the instruction given by the court. Our supreme court has recently reiterated a long-held approach to an appellate review of an ineffective-assistance-of-counsel claim arising out of an erroneous jury instruction:

> We have made it clear that ineffective-assistance-of-counsel claims based on failure to preserve error are not to be reviewed on the basis of whether the claimed error would have required reversal if it had been preserved at trial. Rather, a defendant must demonstrate a breach of an essential duty and prejudice. In ineffective-assistance-of-counsel claims "the instruction complained of [must

be] of such a nature that the resulting conviction violate[s] due process."

*State v. Thorndike*, 860 N.W.2d 316, 321 (Iowa 2015) (alterations in original) (citation omitted). In order to prevail, Boruch "must affirmatively demonstrate counsel's alleged deficiency undermines our confidence in the verdict and therefore resulted in prejudice entitling him to a new trial, regardless of whether his claim would require reversal if it were before us on direct appeal." *Id.* at 321-22. If the erroneous instruction does not raise a reasonable probability the outcome of the trial could have been different had counsel not erred, there would be no prejudice to Boruch. *See id.* at 322.

Although Boruch claimed another person must have stabbed the victim, the victim's eye-witness account, statements made by Boruch at the time of arrest, and other overwhelming evidence was against him. On our de novo review of the facts, we believe there is not a reasonable probability the verdict would have been different if a correct instruction had been given. Consequently, Boruch has not established he was prejudiced by the instruction given, and his claim of ineffective assistance of counsel for failure to object to the instruction fails.

### B. Jail Room-and-Board Fees

A criminal defendant is entitled to a preliminary hearing within ten days of his initial appearance if he is in custody and within twenty days if he is not in custody. Iowa R. Crim. P. 2.2(4)(a).

Boruch challenges the assessment of jail room-and-board fees on two bases: (1) he should not be charged for room and board while he was illegally

detained, which he claims was any time after the date by which he should have had a preliminary hearing (July 19); and (2) the court abused its discretion when it approved the sheriff's jail room-and-board claim without an evidentiary hearing to consider the number of days for which he should have been charged. He does not challenge the amount of the daily charges, and in fact requests that he be charged at the Dallas County jail charge of $60 per day, plus a $15 medical charge, but for only the ten days he claims he was legally held in jail. Procedurally, his challenge is that the sentence as to the judgment[1] for the jail fees was illegal; if not illegal, the court abused its discretion in requiring him to pay the full costs; or that counsel was ineffective in failing to alert the court of his improper confinement.

As we conclude the issue of legality of his confinement is dispositive, we choose to address only that issue. We conclude the case of *State v. Rouse* requires we find the detention was not unlawful. 290 N.W.2d 911 (Iowa 1980). Boruch was not entitled to dismissal of his charges after he was not granted a preliminary hearing within ten days after his initial appearance, even though the trial information was not filed until nine days later. *Id.* at 913. During that time he was entitled to challenge his custody by a habeas corpus proceeding, *id.* at 913, but he failed to do so.[2] Thus, his incarceration was subject to challenge, but without a judicial determination that he was entitled to be released, his

---

[1] He makes no claim the jail fees were ordered as restitution. *See State v. Abrahamson*, 696 N.W.2d 589, 591 (Iowa 2005) (finding a sheriff must make a specific request to have a room-and-board reimbursement claim included in a restitution plan under Iowa Code section 356.7(2)(g), or the claim will be a judgment against the defendant pursuant to section 356.7(3) once approved by the court).

[2] We note that between the date by which he should have had a preliminary hearing and the date the trial information was filed, he had a hearing on his request for bond review but did not assert a habeas corpus claim.

incarceration was not illegal. Consequently, his challenge to room-and-board fees from July 19 to July 28 fails. Further, there is no doubt Boruch was legally held from the time of the filing of the trial information, which affirmed his conditions of release—i.e., cash bond—as previously ordered by the court. In other words, even if he had been released as a result of a habeas corpus proceeding, the filing of the trial information required he be held in custody subject to a cash bond, which he had not been able to post. To be clear, we do *not* conclude Boruch was illegally held for any of his Dallas County stay. The jail fees were calculated for the correct number of days of incarceration. Having reached the ultimate conclusion, we need not address his claim the court should have afforded him a hearing or the court abused its discretion by approving the claim filed by the sheriff.

### C. No-Contact Order

Boruch next challenges the provision of the sentencing order that extended the previously entered no-contact order for five years from the date of Boruch's release from incarceration. He argues the extension of the no-contact order is a part of his sentence and is illegal as the district court had no authority to impose a no-contact order to go into effect on a future date beyond the five years provided by Iowa Code section 664A.5. He asks us to vacate the no-contact order and remand the case for entry of an order authorized by law.

In the case of *State v. Sanchez*, an unreported decision of a panel of this court, the State made essentially the same arguments it makes here. *State v. Sanchez*, No. 13-1989, 2015 WL 4935530, at *4-6 (Iowa Ct. App. Aug. 19, 2015). We repeat the reasoning from *Sanchez* as directly applicable here:

We first address the State's argument the no-contact order is not subject to review in this direct appeal because it is not a sentencing option under Iowa Code section 901.5. Section 901.5 merely identifies the sentencing options the district court must consider in every case. *See* Iowa Code § 901.5 (stating "the court shall consider the following sentencing options"). Nothing in the language of section 901.5 limits the district court's authority to include other terms in a sentencing order. Rather, the court's sentencing options are limited to those authorized by law. *See [State v.] Manser*, 626 N.W.2d [872,] 875 [(Iowa Ct. App. 2001)] (vacating the defendant's sentence because it was not authorized by the "general-application sentencing provisions" or any other provision of the Iowa Code). For instance, section 901.5 does not include restitution among the listed sentencing options. However, restitution may be imposed as part of a sentencing order because restitution is authorized by statute. *See State v. Alspach*, 554 N.W.2d 882, 884 (Iowa 1996). Likewise, no-contact orders are not discussed in section 901.5, but they are authorized pursuant to chapter 664A.

We next address the State's argument that the no-contact order is not subject to review in this direct appeal because it is collateral to and not part of the sentence. In determining whether a provision can be challenged as an illegal sentence, the relevant question is whether the provision was included in the sentencing order. If contained in the sentencing order, it is part of the sentence that may be challenged at any time, whereas those matters that follow the entry of final judgment are collateral and must be separately appealed. *See State v. Formaro*, 638 N.W.2d 720, 727 (Iowa 2002) (distinguishing those situations where the terms and conditions of bail are contained in a judgment and sentence and are therefore subject to challenge on direct appeal with those situations in which the court addresses the issue of bail following the entry of a judgment and sentence and therefore the ruling must be separately appealed); *Alspach*, 554 N.W.2d at 884 (holding a defendant is entitled to court-appointed counsel when challenging restitution imposed as part of the original sentencing order and distinguishing restitution imposed in sentencing orders from later actions to modify a restitution plan, which are "civil in nature and not part of the criminal proceedings"). The unpublished opinion cited by the State for the proposition that a no-contact order is not part of a defendant's sentence supports this distinction. In that case, the court "did not continue the no-contact order as part of the sentence." *State v. Hughes*, No. 02-1751, 2003 WL 22469744, at *2 (Iowa Ct. App. Oct. 29, 2003). Instead, "as a separate matter, not a part of a sentencing, the trial court ordered a one-year extension of the no-contact order so as to prohibit [the defendant] from contacting the victim prior to beginning his sentence, pending

appeal." *Id.* The case at bar differs because the sentencing order includes a provision prohibiting Sanchez from having contact with the victims for five years. Therefore, it is part of the sentence and may be challenged in this appeal. *See State v. Schnieders*, No. 14-1675, 2015 WL 4233382, at *4–5 (Iowa Ct. App. July 9, 2015) (considering an appeal of a section 664A.2 no-contact order as part of a sentence); *State v. Grover*, No. 14-0072, 2014 WL 7343514, at *1–2 (Iowa Ct. App. Dec. 24, 2014) (finding a firearm prohibition included in a chapter 664A no-contact order was an illegal sentence because it was not authorized by chapter 664A, standing alone); *State v. Smith*, No. 13-1268, 2014 WL 2600325, at *3 (Iowa Ct. App. June 11, 2014) (vacating as an illegal sentence the portion of a chapter 664A no-contact order entered at sentencing because the condition prohibiting the defendant from contact with all juveniles was unreasonably excessive); *State v. Cramer*, No. 09-0957, 2010 WL 2925127, at *6–7 (Iowa Ct. App. July 28, 2010) (concluding the defendant did not receive an illegal sentence when issued a chapter 664A no-contact order as part of his sentence because protected party was a victim as the term is used in chapter 664A).

Iowa Code section 664A.5 states that upon conviction of a public offense for which there is a victim, "[t]he court may enter a no-contact order or continue the no-contact order already in effect for a period of five years from the date the judgment is entered."

2015 WL 4935530, at *4-6 (fourth and fifth alterations in original). Like in *Sanchez*, the court here had no authority to enter a no-contact order to commence upon Boruch's release from incarceration. That portion of the sentence was illegal and is void. Accordingly, we vacate the no-contact order and remand for entry of a corrected sentencing order to provide for a no-contact order authorized by law. We do not order a resentencing hearing.

## IV. Conclusion

We vacate the portion of the sentencing order concerning the no-contact order, remand for entry of a corrected sentencing order, and affirm the district court in all other respects.

**AFFIRMED IN PART, VACATED IN PART, AND REMANDED.**